IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**CHRISTIAN RENTERIA-LEY,**

Defendant.

Nos. CR 06-00394-MO
CR 06-00170-MO
CV 09-70019-MO
CV 09-70020-MO

OPINION AND ORDER

MOSMAN, J.,

Christian Renteria-Ley, appearing pro se, filed a Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 (#154). Mr. Renteria-Ley argues that his sentence and conviction should be vacated because he was denied effective assistance of counsel. (Mem. in Supp. (#155) 2.) Mr. Renteria-Ley also requests that I grant him an evidentiary hearing on his motion. (Reply (#168) 16.) For the reasons set forth below, I DENY the request for an evidentiary hearing and DENY the § 2255 motion.

### BACKGROUND

Samuel Kauffman represented Mr. Renteria-Ley prior to and during the plea proceedings. On January 25, 2008, Mr. Renteria-Ley pled guilty in case CR 06-394-MO to one count of distribution of heroin to an individual resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Plea Agreement (#115) ¶ 2.) On the same date, Mr. Renteria-Ley pled guilty in

PAGE 1 - OPINION AND ORDER

case CR 06-170-MO to one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Plea Pet. (#40) ¶ 2.) As part of the plea agreement, Mr. Renteria-Ley waived his right to appeal unless (1) his sentence exceeded 135-months imprisonment; (2) the Court applied an upward departure under Chapter 5K of the Sentencing Guidelines in arriving at a guideline range; or (3) the Court imposed a sentence which exceeded the advisory range. (Plea Agreement (#115) ¶ 12.) Mr. Renteria-Ley also waived his right to collaterally attack his own conviction or sentence under 28 U.S.C. § 2255, except for claims regarding ineffective assistance of counsel. (*Id.*)

The plea agreement calculated a Base Offense Level of 38 regarding CR 06-394-MO. (*Id.* at ¶ 7.) The parties stipulated that the Court would determine the total sentence of imprisonment based on the guideline level applicable to the drug charge and that Mr. Renteria-Ley's sentence would not be increased by any sentence imposed on the illegal reentry charge in CR 06-170-MO. (*Id.*) Further, the government agreed to not file for a sentencing enhancement based on Mr. Renteria-Ley's prior drug conviction. (*Id.* at ¶ 10.) A sentencing enhancement based on a prior drug conviction could have exposed Mr. Renteria-Ley to a life sentence. (Pl.'s Resp. (#160) 2.) After the Court accepted Mr. Renteria-Ley's guilty plea, Mr. Kauffman petitioned to withdraw as Mr. Renteria-Ley's attorney and was granted permission to do so on May 12, 2008. (Minute Order (#133).) The Court appointed Joe Calhoun to represent Mr. Renteria-Ley on May 14, 2008, and Mr. Calhoun represented Mr. Renteria-Ley during sentencing. (CJA Appointment (#136).)

The government's sentencing memorandum requested a Criminal History Category of III. (Sentencing Mem. (#147) 2.) Before any departures, the advisory range was 210 to 262 months,

with a mandatory minimum sentence of 240 months. (Pl.'s Resp. (#160) Ex. 5 at 6.) After a three-level downward adjustment for acceptance of responsibility and a four-level downward adjustment for assistance to the government, the government recommended a Base Offense Level of 31, a Criminal History Category of III, and a sentence of 135-months imprisonment. (Sentencing Mem. (#147) 2.) The government's request for the downward departures allowed Mr. Renteria-Ley to receive a sentence lower than the 240-month minimum. (Pl.'s Resp. (#160) Ex. 5 at 6.)

In a pre-sentencing letter, Mr. Calhoun argued that a Criminal History Category of III over-represented Mr. Renteria-Ley's past criminal activity. (Pl.'s Resp. (#160) Ex. 6 at 2.) Based on the age of Mr. Renteria-Ley's past convictions, his age at the time of those convictions, the nature of those convictions, and the amount of time that had elapsed since those convictions, Mr. Calhoun suggested that a Criminal History Category of I would be more appropriate.[1] (*Id.*) In light of the particular circumstances[2] of this case and the sentencing disparities between Mr. Renteria-Ley and his co-defendants, Mr. Calhoun further requested that the Court depart from the guidelines by further reducing the Base Offense Level downward four levels to 27, or alternatively, imposing a sentence of 87 months. (*Id.* at 4-6.)

At sentencing on August 27, 2008, I found a Criminal History Level of III to accurately

---

[1] The guideline range for a Criminal History Category of I and a Base Offense Level of 31 is 108-135 months. (Pl.'s Resp. (#160) Ex. 6 at 4.)

[2] Mr. Calhoun's letter argued that the Court should consider the possibility that the decedent intended to take his own life by overdosing and that a two-level downward departure would be appropriate based on that possibility. (Pl.'s Resp. (#160) Ex. 6 at 5.) To support the downward departure request, Mr. Calhoun pointed to statements made by the decedent's mother about a previous overdose and the decedent's suicidal tendencies. (*Id.*) Further, Mr. Calhoun attached the decedent's mental health records to the letter. (*Id.* at 8.)

PAGE 3 - OPINION AND ORDER

reflect Mr. Renteria-Ley's criminal history, and I granted the government's downward departure request. Accordingly, I sentenced Mr. Renteria-Ley to 135-months imprisonment, three years of supervised release, and a $100 mandatory fee assessment. (J. & Commitment (#150).) In doing so, I noted that Mr. Renteria-Ley, with the government's assistance, had cut his initial sentencing exposure in half. (Pl.'s Resp. (#160) Ex. 5 at 8-9.)

## DISCUSSION

Mr. Renteria-Ley argues that he was denied effective assistance of counsel. He asserts that counsel failed to (1) "investigate the law and facts involved in the case"; (2) "move the court for dismissal of [the] indictment due to vagueness"; (3) "move the court for withdrawal of [his] guilty plea"; (4) "properly present evidence of suicid[e] attempts made by decedents, warranting a downward departure or a variance from the sentence recommended in the guidelines"; (5) "persuade the court to sentence [him] within the range it sentenced prior defendants"; (6) "object to the sentence imposed"; and (7) "file an appeal." (Mem. in Supp. (#155) 2.) In his Reply, Mr. Renteria-Ley also asks me to consider if he was capable of understanding what he was giving up (specifically, his appeal rights) by signing the plea agreement given his language barrier. (Reply (#168) 15-16.) Finally, Mr. Renteria-Ley requests that I grant him an evidentiary hearing. (*Id.* at 16.)

Counsel is required to provide "reasonably effective performance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant has the burden of proof in an ineffective assistance of counsel claim. *Id.* at 690. In order to show ineffective assistance of counsel, a party must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *Id.* In order to prove deficient performance, a party must show that

PAGE 4 - OPINION AND ORDER

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The court uses a highly deferential standard to scrutinize counsel's performance, with a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Id.* at 689. To demonstrate prejudice, a party must show that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694.

I.   **Failure to Investigate the Law and Facts**

Mr. Renteria-Ley first claims that counsel during the "pre-guilty plea [phase] and [at] sentencing" were ineffective for failing to investigate the law and facts relevant to his case. (Mem. in Supp. (#155) 2.) However, in his Reply, Mr. Renteria-Ley focuses on the performance of his pre-guilty plea counsel, Mr. Kauffman. (*See* Reply (#168) 3-4.) Mr. Renteria-Ley argues that had Mr. Kauffman done a reasonable investigation, he would have presented Mr. Renteria-Ley's case as an exception to the almost strict liability of § 841(b)(1)(c). (*Id.* at 3.)

Although this "failure to investigate" claim is styled as a separate ground for relief, it is analytically indistinguishable from Mr. Renteria-Ley's claim that counsel should have moved to dismiss for vagueness. In other words, the "law" that he claims counsel should have investigated is the law discussed in *United States v. Houston*, 406 F.3d 1121 (9th Cir. 2005) regarding when § 841 might not apply. The "facts" Mr. Renteria-Ley thinks counsel should have investigated are those facts supporting his attenuation from the decedent.[3] Whether the law in *Houston* or the facts of this case actually supported any argument by Mr. Renteria-Ley for the inapplicability of

---

[3] Mr. Renteria-Ley also claims counsel should have investigated the facts evidencing an intent of the decedent to commit suicide. (Mem. in Supp. (#155) 12.) Counsel's presentation of the possibility of suicide as a mitigating factor in sentencing is discussed further in Section IV.

PAGE 5 - OPINION AND ORDER

§ 841 is discussed in Section II. For purposes of a failure to investigate claim, it is clear that the relevant facts were known to all and discussed at various points along the way, including the plea colloquy (Pl.'s Resp. (#160) Ex. 4 at 12-13), the pre-sentence report, the sentencing memorandums, and at the sentencing hearing.[4] As will be shown more fully below, neither the relevant facts nor the applicable law would have provided Mr. Renteria-Ley with an argument to escape the reach of § 841.

## II.     Failure to Move for Dismissal of the Indictment

Mr. Renteria-Ley claims that both Mr. Kauffman and Mr. Calhoun were ineffective for failing to file a motion to dismiss the indictment due to vagueness. (Reply (#168) 7.) Mr. Renteria-Ley argues that 21 U.S.C. § 841 is vague because it impermissibly overreaches and allows the government to hold a defendant liable for the remote involvement of a distributor in a victim's death.[5] (*Id.* at 5.) For example, Mr. Renteria-Ley sold heroin to a customer, who resold to the victim's wife, who gave the drug to the victim. (Pl.'s Resp. (#160) Ex. 4 at 12.) Section 841 permitted the government to charge Mr. Renteria-Ley as having caused the victim's death even though the heroin went through the hands of others before it reached the victim. (*See id.*) Mr.

---

[4] It is worth noting that during the plea hearing, I asked Mr. Renteria-Ley if Mr. Kauffman had been able to answer his questions and if he was satisfied with his representation. (Pl.'s Resp. (#160) Ex. 4 at 5.) Mr. Renteria-Ley stated that he was satisfied with counsel's performance and that Mr. Kauffman had been able to answer his questions. (*Id.*) Further, Mr. Renteria-Ley agreed with the government's statements that in 2006, he sold heroin that resulted in the death of another person. (*Id.* at 13.) Mr. Calhoun's affidavit also states that he investigated the relevant law and facts related to this case. (Pl.'s Resp. (#160) Ex. 1 at 1.)

[5] Mr. Renteria-Ley's argument focuses on 28 U.S.C. § 841 being overreaching as opposed to not providing an ordinary person fair notice of its meaning. Based on my interpretation of Mr. Renteria-Ley's arguments, I assume that he intended to argue that the statute is overreaching.

PAGE 6 - OPINION AND ORDER

Renteria-Ley asserts that he could not have foreseen that the sale would result in death and that if counsel had investigated this issue properly, he would have had a viable defense. (Reply (#168) 12.) This defense depends on the proposition that Mr. Renteria-Ley's involvement in the victim's death is so attenuated that liability under § 841 cannot be imposed on him without violating due process. (*See id.* at 5-6.)

The Ninth Circuit has held 28 U.S.C. § 841 does not include foresight as an element of the crime. *Houston*, 406 F.3d at 1122. However, the *Houston* court recognized that there may be some cases where imposing liability on a defendant largely removed from the victim could be a violation of due process. *Id.* at 1122 n.5. Mr. Renteria-Ley attempts to characterize his involvement as falling within this uncertain exception. Mr. Renteria-Ley argues that *Houston* is factually distinguishable, but Mr. Renteria-Ley does not point to any cases finding that the imposition of liability under § 841 on a drug dealer violated due process because the dealer was so far removed from the victim. (*See* Reply (#168) 6.) I acknowledge that *Houston* is not factually identical, but both it and other precedent support the conclusion that Mr. Renteria-Ley is not so far removed as to render the imposition of liability under § 841 a violation of due process. *See United States v. De La Cruz*, 514 F.3d 121 (1st Cir. 2008) (upholding a drug dealer's conviction notwithstanding the drug passing through the hands of others before ultimately reaching the victim).

In *De La Cruz*, the defendant sold to a regular customer, Allison Tracy. *Id.* at 126. Ms. Tracy then sold to one of her customers, Jesse Flynn, who sold to a childhood friend, Bryan Wallace. *Id.* Mr. Wallace died, and the defendant was convicted for distributing heroin that caused the death of another person under § 841. *Id.* Even though the heroin passed through the

PAGE 7 - OPINION AND ORDER

hands of two others before it reached the victim, the First Circuit affirmed the conviction. *Id.* at 138. In doing so, the First Circuit noted *Houston* for the principle that foreseeability is not a required element of a death-resulting drug offense. *Id.* at 137.

Similar to the facts in *De La Cruz*, the heroin distributed by Mr. Renteria-Ley passed through the hands of two others before reaching the victim. In fact, it is probably more accurate to say that Mr. Renteria-Ley sold heroin to a regular customer, who sold to a married couple, both of whom had a history of drug use, and one of whom died from the use of that heroin. Viewed this way, there is only one real intervening step between Mr. Renteria-Ley and the decedent. Therefore, Mr. Renteria-Ley's case falls squarely within the reach of § 841 as described in *Houston* and *De La Cruz*.

At sentencing, I noted that while not a drug kingpin, Mr. Renteria-Ley was a supplier. (Pl.'s Resp. (#160) Ex. 5 at 8.) Further, I told Mr. Renteria-Ley that although his situation was very serious, no one viewed him as having personally killed the victim. (*Id.* at 9.) Neither Mr. Kauffman nor Mr. Calhoun were ineffective for failing to raise lack of foresight as a defense during the proceedings because foresight is not an element of the crime and counsel was not required to raise a defense that had no basis in law. *See Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) (stating that counsel was not required to present a baseless defense). Counsel's decision not to assert a defense that went against the plain language of a statute and available case law was well within counsel's determination of litigation strategy.

Further, Mr. Calhoun was only appointed to represent Mr. Renteria-Ley after he had pled guilty to the indictment. After Mr. Renteria-Ley acknowledged on the record that he was guilty, Mr. Calhoun's primary role was to prepare for sentencing, not move against the indictment.

PAGE 8 - OPINION AND ORDER

### III.    Failure to Move for Withdrawal of the Guilty Plea

Mr. Renteria-Ley claims that Mr. Calhoun was ineffective for not moving to withdraw his guilty plea when Mr. Renteria-Ley directed counsel to do so. (Mem. in Supp. (#155) 14.) Mr. Calhoun stated that he never told Mr. Renteria-Ley that he would withdraw the guilty plea, but that he did advise his client against withdrawal and Mr. Renteria-Ley took his advice. (Pl.'s Resp. (#160) Ex. 1 at 3.) Mr. Calhoun further asserts that he never told Mr. Renteria-Ley that a motion to withdraw had been denied by the Court. (*Id.*) If Mr. Calhoun had withdrawn the guilty plea, the government would have been free to file for a sentencing enhancement based on Mr. Renteria-Ley's prior drug conviction. (*Id.*) An enhancement based on a prior drug conviction would have exposed Mr. Renteria-Ley to a potential statutory minimum sentence of life. (Pl.'s Resp. (#160) 7.) I find no facts in the record which show Mr. Renteria-Ley explicitly requested Mr. Calhoun to withdraw his guilty plea. In the absence of any facts that evidence a direct request to withdraw, Mr. Calhoun was not ineffective.

### IV.    Failure to Move for a Sentencing Variance

Mr. Renteria-Ley acknowledges that Mr. Calhoun presented evidence of suicide at sentencing, but alleges that the presentation was not sufficient to meet the effective assistance standard. (Reply (#168) 9.) Mr. Renteria-Ley claims that Mr. Calhoun should have called witnesses at sentencing to present further evidence of suicide. (*Id.*) Further, Mr. Renteria-Ley states that I would have granted a downward departure had Mr. Calhoun called witnesses. (*Id.* at 10-11.)

Counsel's pre-sentencing letter requested a downward departure from the guidelines due to the possibility that the decedent intentionally overdosed and noted that the decedent's mother

PAGE 9 - OPINION AND ORDER

felt her son's death may have been a suicide. (Pl.'s Resp. (#160) Ex. 6 at 8-9.) Mr. Calhoun further supported his argument by attaching the decedent's mental health records to his letter. (*See id.* at 8.) Mr. Calhoun again raised his argument for a downward departure due to the possibility of suicide at Mr. Renteria-Ley's sentencing. (Pl.'s Resp. (#160) Ex. 5 at 4-5.) Mr. Calhoun's letter, which I found to be "well presented," sufficiently communicated his argument, and he was not required to call witnesses to present further evidence on the issue. (*See id.* at 6.) Further, I reject Mr. Renteria-Ley's conclusions of how I would have ruled had Mr. Calhoun called witnesses. I find counsel properly presented evidence of the possibility of suicide in both his pre-sentencing letter and during sentencing, and I considered this argument in arriving at a reasonable sentence.

## V.     Failure to Persuade the Court for a Similar Sentence

Mr. Renteria-Ley argues that Mr. Calhoun's unsuccessful attempt to persuade the Court to grant a downward departure due to sentencing disparities between Mr. Renteria-Ley and the co-defendants was constitutionally ineffective. (Reply (#168) 11.) Mr. Renteria-Ley also asserts that the Court improperly considered his immigration status during sentencing and that counsel was ineffective for not objecting to this. (Mem. in Supp. (#155) 17.) Further, Mr. Renteria-Ley appears to argue that Mr. Calhoun should have requested a departure based on Mr. Renteria-Ley's immigration status because his deportable status resulted in his receiving a longer sentence. (Reply (#168) 12.)

Mr. Calhoun's pre-sentencing letter argued for a sentence on par with those given to the co-defendants. (Pl.'s Resp. (#160) Ex. 6 at 5.) During sentencing, Mr. Calhoun pointed to his letter and noted the potential for a sentencing disparity, but did not object to the sentence

PAGE 10 - OPINION AND ORDER

imposed. (*Id.* at Ex. 5 at 3-4.) I considered the disparity in sentences presented by Mr. Calhoun in his letter but concluded that Mr. Renteria-Ley was in a different posture than the other defendants. (*Id.* at 7-8.) While I noted his status as an illegal alien during sentencing, I considered Mr. Renteria-Ley's criminal history, status as a drug supplier, and the seriousness of the offense in coming to a reasonable sentence. (*Id.* at 6-8.) I concluded these reasons supported Mr. Renteria-Ley receiving a longer sentence than his co-defendants. (*Id.*) I noted Mr. Renteria-Ley's immigration status because he was being concurrently sentenced on the illegal reentry charge in CR 06-170-MO. (*Id.*) During the hearing I commended Mr. Calhoun for his thoughtful and well-presented letter. (*Id.* at 6.) Having seriously considered and rejected Mr. Calhoun's arguments, counsel had no basis for further objection other than the many grounds already raised. I find that counsel was not ineffective for failing to persuade the Court to sentence Mr. Renteria-Ley in the same range as the co-defendants. I further find that counsel was not ineffective for failing to object to the sentence.

## VI.     Failure to File an Appeal

Finally, Mr. Renteria-Ley claims counsel was ineffective because Mr. Calhoun failed to file an appeal when requested to do so. (Mem. in Supp. (#155) 18.) However, there is no evidence in the record that Mr. Renteria-Ley explicitly requested Mr. Calhoun to file an appeal. Mr. Renteria-Ley points to the statement in Mr. Calhoun's affidavit about speaking with someone in Mr. Renteria-Ley's family about the sentence, but not an appeal. (Reply (#168) 12.) Mr. Renteria-Ley asserts that this statement is misleading and that the only reason a family member would call a lawyer after sentencing would be to ask what the lawyer is going to do about it. (*Id.* at 11-12.) Mr. Renteria-Ley claims he asked Mr. Calhoun to come see him after

sentencing, and that Mr. Calhoun should have taken this as an indication of Mr. Renteria-Ley's desire to appeal. (*Id.* at 13.) Mr. Renteria-Ley states that Mr. Calhoun never visited him in his cell after sentencing. (*Id.*) Finally, Mr. Renteria-Ley submits an unsigned affidavit from his father. (Reply (#168) Ex. 1.) The affidavit states that Mr. Renteria-Ley's father contacted Mr. Kauffman to request an appeal because Mr. Renteria-Ley did not know how to contact Mr. Calhoun. (*Id.*) Overall, Mr. Renteria-Ley argues that Mr. Calhoun should have been on notice of his desire to appeal. (Reply (#168) 16.) Mr. Calhoun states that he was never informed of Mr. Renteria-Ley's desire to appeal, and if he had been, would have filed for an appeal. (Pl.'s Resp. (#160) Ex. 1 at 3.)

A defendant receives ineffective assistance of counsel if counsel refuses to file an appeal when specifically instructed to by the client, even if such a filing is contrary to the terms of a plea agreement and would be harmful to the client. *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). If a client explicitly tells the lawyer to file an appeal and the lawyer refuses, both prongs of the *Strickland* analysis are satisfied. *Id.*

Mr. Renteria-Ley's ineffective assistance claim due to the alleged failure of Mr. Calhoun to file an appeal depends on whether Mr. Calhoun was specifically instructed to do so. Mr. Calhoun stated on the record that Mr. Renteria-Ley never instructed him to file an appeal. (Pl.'s Resp. (#160) Ex. 1 at 3.) Mr. Renteria-Ley's assertion that Mr. Calhoun should have been on notice because he spoke to a member of Mr. Renteria-Ley's family after sentencing is speculative and unsupported by any evidence. Mr. Renteria-Ley's request for Mr. Calhoun to come see him is not a specific instruction to Mr. Calhoun to appeal. Because Mr. Renteria-Ley acknowledges that Mr. Calhoun never came to see him, I presume there was no later conversation where Mr.

PAGE 12 - OPINION AND ORDER

Renteria-Ley gave Mr. Calhoun explicit directions to file an appeal.

The affidavit states that Mr. Renteria-Ley's father called Mr. Kauffman, not Mr. Calhoun, to request an appeal. (Reply (#168) Ex. 1.) The Court had previously granted Mr. Kauffman's request to withdraw as Mr. Renteria-Ley's counsel, so Mr. Kauffman had no obligation to file an appeal for Mr. Renteria-Ley. In light of Mr. Calhoun's affidavit, and the lack of evidence pointing to Mr. Renteria-Ley giving Mr. Calhoun a specific instruction to appeal, I find Mr. Calhoun was not ineffective under the principles in *Sandoval-Lopez*.

## VII.     Failure to Understand the Appeal Waiver

Mr. Renteria-Ley raises a new argument in his Reply. Mr. Renteria-Ley requests that I consider whether he understood the terms of the plea agreement due to his language barrier. (Reply (#168) 15-16.) Mr. Renteria-Ley states that the plea petition, the only document written in Spanish, does not mention an appeal waiver. (*Id.* at 15.) Further, Mr. Renteria-Ley asserts that Mr. Kauffman never told him that he would be waiving his appeal rights if I imposed a 135-month sentence. (*Id.* at 15-16.)

I am not persuaded that Mr. Renteria-Ley's language barrier prevented him from understanding the plea agreement. Although the plea petition does not have a specific paragraph regarding the appeal waiver, by signing the plea petition Mr. Renteria-Ley acknowledged that he understood the whole plea agreement. (Pl.'s Resp. (#160) Ex. 2 at 12.) During the change of plea proceeding, at which Mr. Renteria-Ley received an interpreter, I asked Mr. Renteria-Ley if he had read the plea agreement and if he understood all of the terms. (Pl.'s Resp. (#160) Ex. 4 at 5-6.) Mr. Renteria-Ley answered affirmatively to both questions. (*Id.*) Further, I asked Mr. Renteria-Ley if he understood he was giving up his appeal rights as part of the plea agreement.

PAGE 13 - OPINION AND ORDER

(*Id.* at 10.) Again, Mr. Renteria-Ley answered affirmatively. (*Id.*) In light of the plea colloquy and the statements in the plea petition, I find that Mr. Renteria-Ley understood the appeal waiver when he chose to plead guilty.

## VIII.  Evidentiary Hearing

Mr. Renteria-Ley claims he has shown facts, which if proven, demonstrate that both Mr. Kauffman and Mr. Calhoun were ineffective. (Reply (#168) 16-17.) Therefore, Mr. Renteria-Ley asserts that under established case law, the Court is required to grant him an evidentiary hearing. *See Gov't of the Virgin Islands v. Weathermax*, 20 F.3d 572 (3rd Cir. 1994). Although the holding of the *Weathermax* case is not binding on this Court, the Ninth Circuit has a similar standard for evidentiary hearings in habeas proceedings. The court is required to grant an evidentiary hearing when a party has made specific factual allegations, which if true, entitle the party to relief. *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003). However, I have not found facts on the record, which if proven, entitle Mr. Renteria-Ley to relief. Because I have not found facts in evidence which could entitle Mr. Renteria-Ley to relief if true, I am not required to grant Mr. Renteria-Ley an evidentiary hearing.

## CONCLUSION

For the reasons given above, I DENY defendant's request for an evidentiary hearing and DENY the Motion to Vacate, Set Aside or Correct Sentence (#154).

IT IS SO ORDERED.

DATED this  28th   day of April, 2010.

                                                     /s/ Michael W Mosman
                                                   MICHAEL W. MOSMAN
                                                   United States District Judge